***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant.
3. Defendant is a self-insured and Gallagher Bassett is the servicing agent.
4. A Form 22 was submitted from which an average weekly wage may be determined.
5. Plaintiff was out of work from 2 May 2000 until 1 October 2000 and from November 12, 2000 until the present.
6. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
 ***********
Based upon all the competent evidence adduced at the hearing, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 29 years old and had begun his employment with defendant in March 1995. Plaintiff initially worked in Florida and was transferred to North Carolina in June 1999 as a "casual" pickup and delivery driver. Casual employees work part time depending upon the availability of work to perform.
2. After approximately one to two weeks, plaintiff became a full time pickup and delivery driver entitling him to work a minimum of 40 hours per week. Plaintiff worked approximately six to seven hours each day doing pick up and delivery duties. He opted not to perform additional duties available to him which would have provided forty hours of work per week.
3. Plaintiff's job required him to drive a truck from Sanford to the Southern Pines/Aberdeen area and make local deliveries and pickups. Plaintiff normally delivered to approximately 10 customers each day. Plaintiff was required to locate and check freight, process paperwork, maintain telephone contact with his dispatch office and assist with the loading and unloading of freight when necessary. Plaintiff estimated that he spent on average 15 minutes at each job.
4. Sixty-five percent of the freight hauled by plaintiff was motor freight which was handled by a tow motor or forklift. The remainder of the freight hauled by plaintiff was hand freight which was primarily loaded and unloaded by customers at the various destinations. Plaintiff was not required on a regular basis to help unload the hand freight.
5. Billy Wolfenburger, the terminal manager for defendant in Sanford, testified that there was a great deal of down time in which drivers, including plaintiff, would be waiting to be loaded or unloaded or to receive instructions on delivery destinations.
6. Plaintiff acknowledged that his job primarily required driving and not loading or unloading.
7. In May 2000, plaintiff presented to Mark Brenner, M.D., complaining of bilateral upper extremity, hand and wrist pain. Plaintiff told Dr. Brenner that he worked as a long distance truck driver doing a lot of loading and unloading, and that his pain had existed for approximately 18 months. Dr. Brenner performed nerve conduction studies which indicated possible carpal tunnel syndrome.
8. Dr. Brenner diagnosed plaintiff with bilateral carpal tunnel syndrome and preformed a right carpal tunnel release on 7 July 2000 and a left carpal tunnel release on 1 September 2000.
9. Dr. Brenner was under the mistaken impression that plaintiff was required to drive across country for long distances. Further, Dr. Brenner believed that plaintiff spent a majority of his work day doing "forceful and repetitive lifting," defined by Dr. Brenner as repetitive lifting of more than 15 to 20 pounds. Based upon these beliefs, Dr. Brenner opined that plaintiff's carpal tunnel syndrome was causally related to his job duties, and that plaintiff's job placed him at an increased risk of developing carpal tunnel syndrome over that of the general public.
10. Plaintiff did not inform Dr. Brenner he drove on an interrupted basis, or that he was not required to do a great deal of lifting and handling of freight. Dr. Brenner did not realize 65% of the freight plaintiff transported was motor freight and had to be unloaded with a forklift or other machinery. Further, plaintiff did not inform Dr. Brenner that many customers loaded and unloaded their own freight and the average time he spent at each stop was approximately 15 minutes. When given these facts, Dr. Brenner stated that he would change his position and would not make an association between plaintiff's condition and his job duties.
11. Based upon Dr. Brenner's opinion when provided with the actual activities of plaintiff's job and other evidence presented, the Full Commission finds that plaintiff has not proven by the greater weight of the evidence that his job caused or significantly contributed to the development of his carpal tunnel syndrome. Furthermore, plaintiff has not proven that his job placed him at a greater risk than that of the general public of developing carpal tunnel syndrome.
12. Dr. Brenner was of the opinion that plaintiff had a 7% permanent partial disability to each of his hands and that plaintiff was capable of light duty work three months after his second surgery.
13. Plaintiff has not attempted to look for work since he was released by Dr. Brenner.
14. Plaintiff has failed to prove by the greater weight of the evidence that his carpal tunnel syndrome constitutes an occupational disease as defined under the Act.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order to establish that an employee is disabled as a result of an occupational disease, the employee must show that he has contracted a disease which is "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13).
2. Plaintiff has failed to prove by the greater weight of the evidence that he contracted a compensable occupational disease. Therefore, plaintiff is not entitled to compensation pursuant to the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. §97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of May, 2002.
 S/____________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________________ BUCK LATTIMORE CHAIRMAN